STEPHEN COCKE et al. *v.* JAMES T. RUCKS, Guardian, &c.

1. GUARDIAN AND WARD: LEGAL TITLE TO NOTE BELONGING TO WARD IS IN THE GUARDIAN.—A trustee is clothed with the legal title whenever it is necessary to enable him to execute a trust created by law; and hence, it being the duty of a guardian to collect all debts due to his ward, he may maintain an action in his own name to enforce the collection of a note payable to his predecessor " as guardian" for the ward.

2. SAME: SALES BY: CANNOT BE AVOIDED BY PURCHASER, WITHOUT AN OFFER TO

RETURN THE PROPERTY.—A purchaser of a chattel from a guardian or administrator cannot defeat a recovery for the purchase-money, on account of an alleged invalidity in the sale or title, unless he offer to return the property to the seller.

IN error from the Circuit Court of Monroe county.　Hon. J. M. Acker, judge.

*Stephen Cocke*, for plaintiff in error.

*Locke E. Houston*, for defendant in error, cited 2 How. Miss. 851; 6 S. & M. 259; 10 S. & M. 607; 2 Cushm. 168; 1 Barn. & Cress. 150; 2 How. Miss. 608; *Miller* v. *Bowman*, 13 S. & M. 100; *Bean* v. *George*, 30 Miss. R. 150; *Joslin* v. *Caughlin*, 27 Miss. R. 85; S. C. 30 Ib. 502.

FISHER, J., delivered the opinion of the court.

The plaintiff below, as guardian of certain heirs, brought this suit in the Circuit Court of Monroe county, to recover the amount of a writing obligatory, executed by the defendants, and payable to David Hunter, guardian of the heirs of James Hunter, deceased.

The complaint avers that the said David Hunter having died, the plaintiff, James T. Rucks, was duly appointed the guardian of the said heirs, and in this character he brought this action.

The defendants below demurred to the complaint, and assigned, among other causes, that the suit could only be brought by the administrator of Hunter, the first guardian, and not by the plaintiff, who succeeded Hunter in the guardianship.　The court below having overruled the demurrer, this is the first ground of error assigned.

We will not controvert the position that the suit might have been maintained by Hunter's administrator, if in fact there is one.　But this is not the material question.

At the present day, an administrator only succeeds to so much of the property held by the intestate, as he, the administrator, can appropriate to the payment of debts, or distribute to those entitled to the estate.　As to such property, or rights in action, the administrator is invested with the legal title, for the reason that such title is necessary to enable him to perform the duties enjoined upon him by the law.　The law which requires him to collect the debts of the deceased, to be consistent with itself, confers upon him the legal

title to the evidence or foundation of the debts, that he may perform his duty.   His duties are plainly pointed out by his oath, and the condition of the bond which he is required to give.   He must first pay the debts of the deceased, and then distribute the residue of the estate to those entitled to it under the law; and he is only accountable in his character of administrator, to persons who occupy one or the other of these attitudes—that is to say, creditors or distributees.   We may then safely conclude by remarking, that whenever there is no trust to be executed by an administrator, in regard to a particular subject, he is not invested with the legal title.

There may be exceptions to this rule, as where the administrator is the only party beneficially interested in the estate; the legal title and the trust uniting in the same person, the latter would be merged in the former.

Here the obligation upon its face shows that the whole beneficial interest is in the heirs of James Hunter, deceased, and that no part of the money could be used by the administrator of David Hunter, either in the payment of debts or in making distribution; and there being no trust to be executed, or other duty to be performed by the administrator, he is not clothed with the legal title, for the reason already named, that he acquires such title only to enable him to perform some duty required of him as administrator, and the duty not existing, there is simply no necessity for the vesting of the title.   Payment to the administrator would not discharge the debtors, for the obvious reason that the obligation points to a different person, whose duty it is to receive payment and to manage the fund.

Having disposed of this branch of the case, our next inquiry must be, whether the present guardian can maintain this suit.

The law requires the guardian to collect debts due to his wards, and to manage the estate to the best advantage, and, as already remarked, the law intends to be consistent with itself; and, when it enjoins a duty, it at the same time confers the power to perform it.   The note in this case was payable to Hunter, as guardian, and he certainly could in his lifetime have sued in that character, if he had been so disposed, and recovered the money.   Why, then, shall not the person occupying that relation now, and bound to account in that character, do what the first guardian could have done ?   The

defendants virtually undertook to pay to whomsoever might be the guardian of James Hunter's heirs when payment should be demanded, if not made at the maturity of the note.   They undertook to pay to David Hunter, as guardian, and thus acknowledged the whole beneficial interest to be in his wards, and this was an undertaking to pay to the person legally entitled to receive such beneficial interest, and who is the present guardian, and who alone can give the proper discharge from the debt.   The person legally entitled to receive the money, and who alone can give the necessary acquittance to the debtor, is the person legally entitled to prosecute the suit, if this right should be withheld from him.   The case falls within a familiar principle, that the means must be adequate to the end to be accomplished.   When the law declares the end, it must be understood as conferring the means for its accomplishment.   The guardian is required to collect the debts due to his wards, and is guilty of a breach of trust if he fail to take the proper steps to do so.   Here the end is prescribed, and the means for its accomplishment must be understood.   Whenever the legal title is necessary to enable him to execute his trust, or to perform a duty, the law gives it for that purpose.   The law, by creating the trust, intended to create everything necessary for its complete execution.   A legal title may arise out of a trust created by law, whenever the trust cannot otherwise be fulfilled.   This doctrine has been so fully recognized in all the contests between the trustees appointed under the *quo warranto* laws in this State and bank debtors, that it cannot now be said to be an open question.   There was no express provisions of law investing the trustee with the legal title to the debts in his hands as trustee, yet it was held that such title was implied from the very nature of the duty required of him.   He was required to collect the debts, and was, therefore, clothed with all necessary power for that purpose.

But we will not pursue this inquiry further, and will proceed to notice the other questions presented by the defendants' pleas.

It is alleged that the note was given for a certain slave sold by the former guardian, and that said slave was unsound; that he was represented by the auctioneer to be sound, &c.; that the sale was never confirmed by the Probate Court; and, finally, that the guardian had no title.

These several questions can be disposed of in few words. There is no offer to return the slave, or averment that such offer was ever made. A party cannot be permitted to purchase property at an administrator's or guardian's sale, and hold on to it, and object to paying the purchase-money. This question is now settled, and upon principles which, it is believed, will render its discussion unnecessary in this court.

If the sale be either void or voidable, and the purchaser wish to take advantage of the latter, he has no right to hold the property a moment. He must act promptly, and in good faith, so that the person acting in a fiduciary capacity may discharge his duty according to law. The purchaser cannot so far consult his own interest as both to retain the property and withhold the debt.

We are, therefore, of opinion that the demurrer was properly sustained to the pleas.

Judgment affirmed.